*In the matter of ANNA MACAY and others *ex parte*.

*Sale of land under Decree—Actual payment of Purchase Money necessary.*

The authority conferred on a commissioner to make a deed to land sold under decree of court retaining title until the payment of the purchase money, can only be exercised when the same is *actually* paid—not when it is secured by note.

(*Lord* v. *Merony*, 79 N. C., 14; *Mebane* v. *Mebane*, 80 N. C., 34, cited and approved.)

---

*Ruffin, J., did not sit on the hearing of this case.

MACAY EX PARTE.

MOTION in the cause heard at August Special Term, 1880, of ROWAN Superior Court, before *McKoy, J.*

This was a motion in the cause upon notice to T. J. and P. P. Merony, substantially as follows: You will take notice that at next term I shall move the court to require you to pay a note for $827.21, dated on the 22d of January, 1863, with interest from date, payable to Luke Blackmer, guardian of Anna Macay, and executed by Josephus W. and Newberry F. Hall; and on default of payment on or before a day to be fixed by the court, that judgment be rendered against you for the sale of land (describing it,) the said note having been given for the purchase of said land at a sale made by the clerk and master under a decree rendered at spring term, 1857, of the court of equity for Rowan county in the case of Anna Macay and others *ex parte,* the said note having never been paid, and a deed made to said Hall by the master in violation of the decree—the land at the time of sale belonging to Anna Macay, now the wife of Stephen F. Lord, who joins in this motion. Signed, &c. Petition and answer were filed, and upon the death of said Anna, her husband administrator and the heirs at law were made parties to the proceeding, and a summons issued making Luke Blackmer a party defendant, who also answered the petition.

Upon the trial the jury rendered a verdict in favor of plaintiff, Stephen F. Lord, administrator, and from the judgment thereon the Meronys appealed.

*Messrs. J. S. Henderson* and *J. M. McCorkle,* for petitioners.
*Mr. W. H. Bailey, contra.*

SMITH, C. J. When the same essential facts were before us, upon a former appeal from a judgment rendered in an independent action to charge the land sold by order of the court of equity with the unpaid purchase money, repre-

sented in an insolvent note accepted by the clerk and master and made payable to him as guardian, he acting in both capacities, the plaintiff's equity was fully recognized, but it was held the remedy had been misconceived. Commenting on the case then presented, and delivering the opinion of the court, BYNUM, J., thus speaks:

"The Meronys can be in no better condition than Hall, the first purchaser, for they bought as confessed in their answer with *actual notice* that the purchase money had not been paid by Hall, but that in lieu thereof only a guardian note for the money had been given. The land therefore remained bound for the purchase money, and this proceeding is in the nature of a proceeeding *in rem* to subject that specific property to its payment * * *. The right of the plaintiffs to the relief they claim is so clear that it is a matter of regret that they have resorted to the wrong jurisdiction for redress." *Lord* v. *Merony*, 79 N. C., 14.

The present proceeding is by motion after notice in the original cause, in conformity with the suggestions there made, and supported by a similar statement of facts. The plaintiffs allege that the decree directed the retention of title until full payment of the purchase money, and that the clerk and master, after his appointment as guardian, accepted the note of the purchaser with the personal security, drawn payable to him in his latter capacity, and thereupon executed a deed undertaking to convey the premises to Hall, and that of these facts the defendants had notice.

The defendants in their explanatory answer say that the clerk and master in this transaction "treated the purchase money as paid to himself as commissioner, and then lent to the purchaser, Hall, in the capacity of said Blackmer as guardian," and that thus "the purchase money so due was in fact and legal intendment paid." They further say in reply to the charge of notice, that their information was to the effect that Blackmer as guardian agreed to lend to Hall

the amount due him as clerk and master, and that "instead of going through the formality of receiving the actual cash with one hand and lending it with the other, Blackmer receipted the bid of the purchaser, Hall, contemporaneously taking from him as on an actual tradition of money, a guardian note for the amount well secured."

These unequivocal admissions, notwithstanding the labored effort to assimilate the transaction to a case of actual payment within the requirements of the order of the court, would seem to entitle the plaintiffs to immediate judgment, yet His Honor prepared and submitted a single issue to the jury: "Was the purchase money for the sale of the land in controversy paid by Hall?"

The defendants tendered two additional issues, one before and the other after the hearing of the evidence.

1. Was the note settled in full by Hall with the commissioner?

2. Did the defendants purchase for value and without notice of the equity of Anna Macay?

These were properly refused by the court, the first as being included in the issue that was submitted, and the other for the reason assigned that the fact of notice of the non-payment is not controverted in the answer.

In his examination before the jury upon the matter, Blackmer thus testifies: "Dr. Hall offered to pay me in Confederate currency for his purchase; I refused to take it. He asked me if I would take his brother, Newberry F. Hall, as surety on a guardian note, payable to me as guardian of Anna Macay. I agreed to do so. The note was amply good. I took the note in January, 1863; I can't say I took it as a loan of money, for I did not loan Dr. Hall any money. I considered and treated the note as a payment for the land."

Under the instructions of the court that there was no evidence of actual payment of money and that the giving

of the note was not a payment in accordance with the decree until the note itself was paid, the jury responded to the issue in the negative.

While the facts upon which the plaintiffs' equity rests are not controverted in the answer and do not call for the intervention of a jury, the appellant cannot complain of the order of the court in submitting to them the question of payment and the opportunity of proving it, nor of the instructions of the court as to its force and effect in determining the verdict. The equity itself to charge the land is so fully and clearly established by the opinion in the former appeal under the same circumstances, as to render a further discussion needless.

The authority conferred to make title could only be exercised when the purchase money *was paid, not secured* as attempted here; and the defendants admit that they had information of what had been done.

The plaintiffs are entitled to have a resale of the land for the payment of the debt, under the directions of the court according to the suggestions in *Mebane* v. *Mebane,* 80 N. C., 34, and in other cases. There is no error and this will be certified for further proceedings in the court below.

No error. Affirmed.

---

*In the matter of ANNA MACAY and others *ex parte.*